## J. W. Ward v. The State.

### No. 4552. Decided February 17, 1909.

**1.—Sunday Law—Evidence—Books—Defendant's Admissions.**

Where upon trial of a violation of the Sunday law, the State was permitted to introduce a stub-book containing the stubs from which liquor dealers' license were taken, and which was kept in the deputy clerk's own hand-writing, who had no personal recollection of issuing license to the defendant; and the defendant on cross-examination admitted that he had a liquor license covering the period of the prosecution, there was no error.

**2.—Same—Charge of Court—Clubroom Subterfuge.**

Where upon trial of a violation of the Sunday law the evidence showed that the defendant owned the saloon and was running the upstairs in open violation of the Sunday law, the defense that the defendant operated under a chartered club for the promotion of literary, etc., objects, was overcome, and no charge on this phase of the case was necessary; however, the court's charge submitted this issue, and a special charge on the same subject was correctly refused.

**3.—Same—Charge of Court—Separate Place of Business.**

Where upon trial of a violation of the Sunday law there was no evidence that the defendant was conducting a separate and distinct place of business on the second story of said building without a separate license, there was no error in refusing a special charge that defendant could not be convicted in this event.

**4.—Same—Sufficiency of the Evidence.**

Where upon trial of a violation of the Sunday law the evidence showed that defendant, in order to evade the law, had charge of the business and organized what he called a club, but the whole testimony showed that he had exclusive control of the premises, the conviction was sustained.

Appeal from the County Court of Dallas County at Law.  Tried below before the Hon. W. M. Holland.

Appeal from a conviction of a violation of the Sunday law; penalty, a fine of $200.

The State's testimony showed that the police went to defendant's place of business at the time alleged in the information; that they went up into a rooming house and out through a window into the second story and out on the stairsteps in the back and through the back door; that when they got in they found a bar and some tables and chairs, and there was a bartender and two negro porters in there; that there was beer and whisky behind the bar; that there were a number of men in there sitting around the table, and some were drinking beer; that defendant was sitting over by the table drinking a bottle of beer; that there was some money there on the bar, and that the police didn't remember seeing anyone pay for anything; that the bartender and negroes were waiting on the crowd; that there were some men out on the front of the street, and they were let in by defendant; that when they arrested defendant he took the money that was there; that this was in the second story of the building, there being a regular barroom in the lower story; that the upper story was reached by way of rear steps, and that one had to go out of the building below into the back yard; that the steps in front were boxed up and cut off from the saloon downstairs, with the exception of a door that has a wooden shutter, leading from the saloon to the staircase; that there is a door on the street leading into the staircase, which has a shutter to it, and the steps set back from the sidewalk; that there is a door leading from the saloon into that staircase, etc.; that when the door leading from the saloon downstairs to the stairway is open there is an open passageway from the saloon to the room upstairs where the men were drinking; that this door was frequently seen open on week days and that it had not been seen closed except on this particular Sunday; that there was a punching bag in said upstairs and some reading matter; that people would come in and go out; that there was a bathroom, closet, etc., and a couple of rooms upstairs; that on that day the blinds and shades were up on the front glass doors of the lower floor of the building and one could see through the building; that there was no one in there in the lower saloon; that parties went into the staircase from the door on the sidewalk, and after they got in, one could not tell whether they went upstairs or into the saloon on the lower floor, and no one was seen in there, that some of these men were upstairs when the police got up there who were recognized as the same parties who were seen going in the front door to the staircase.

That the defendant's salary was $15 per month as secretary and treasurer of the club, and all the powers and duties of the president

were conferred upon the defendant and no other officer received any compensation, and that the defendant had charge of everything, handled all the money and paid the bills; that as a matter of fact, the defendant had not received any rents or salary from the club; that the defendant could not produce a single signed application for membership, although he had a lot of blank forms printed; that personally defendant did not know the names of the books belonging to the club; that he never read any of them, and could not name anybody that he ever saw reading any of them; that he could not name a single man that he ever saw in this club room except on Sundays, and that he never saw them do anything up there on Sunday except drink beer and whisky; that defendant passed on the good moral character of all applicants for membership to the club; that one of them at the time of his admission into the club defendant knew had been convicted of vagrancy, that another had been tried on charges of felony; that defendant admitted others of whose moral character he knew nothing; that during the week days defendant kept the beer of the club in his ice box downstairs in his saloon, as an accommodation to the club; and the club's porter was also the porter of defendant's saloon, that he was porter of the saloon downstairs on week days and upstairs on Sundays; that the club's big business was on Sundays, and that all of the money for the club was taken in on Sunday, and that what little money was taken in on week days was left until Sunday and then the entry was made on the books; that there was no athletic apparatus in the club room except the punching bag, and that defendant never saw anyone use the bag except on the Sunday he was arrested.

The defendant in his direct examination contended that he kept his license posted on the first floor, and that there was no business connection between the two places; that he never sold any beer or whisky from his stock downstairs to the club, but got it elsewhere, and that he had no interest in what was upstairs except what any other member had. Defendant introduced in evidence the charter, constitution and bylaws of the club together with its rent contract; that the club had taken in for refreshments $274.80, and on membership fees $87, and had paid out for various expenses including printing, labor and refreshments, $227.25, and that defendant had the balance, which was not enough to pay his salary and rents; that the door leading from the front part of the saloon into the staircase was kept locked all the time, etc.

*Baskett & Evans,* for appellant.—On question of admitting stub-book in evidence: State v. Burnett, 85 S. W. Rep., 613; State v. Mulloy, 86 S. W. Rep., 569; State v. Madeira, 102 S. W. Rep., 1046; State v. Lentz, 83 S. W. Rep., 970; State v. Ripetto, 66 Mo. App., 254.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of violating the Sunday law, and his punishment assessed at a fine of $200.

Bill of exceptions No. 1, shows that the State was permitted to show by the deputy county clerk of Dallas County, who identified a certain book he had as a stub-book, containing the stubs from which liquor dealers' licenses are taken, that said book is kept in his own handwriting, and that he has no personal recollection of even issuing and delivering to this defendant a license as a retail liquor dealer under the Act of the Thirtieth Legislature, or of making said stub, and that the said stub is not a record but an office memorandum. And be it further remembered that there was no evidence of the loss or destruction of any license so issued to the defendant, nor of notice to the defendant or his attorneys to produce same. Whereupon the State offered in evidence a stub from said stub-book, as follows:

"Retail (Liquor) Dealers License.
(Individual)
For the Sale of Spirituous, Vinous or Malt Liquors and
Medicated Bitters.
No. 218.
Dallas County, Texas.
Issued to J. W. Ward,

for the sale of Spirituous, Vinous and Malt Liquors and Medicated Bitters in quantities of one gallon and less than one gallon to be drunk on the premises.

At 153 Main Street, Dallas County, Texas.
Date, Aug. 2, 1907.
State Tax . . . . . $375.00
County Tax . . . . . $187.60
City Tax . . . . . . $. . . . . .
License expires July 31, 1908."

The above bill of exceptions was allowed with this qualification: "Said witness, Whitley, testified that this particular stub introduced in evidence was in his own handwriting. That the entry on the stub was made at the same time the license was issued. That all the liquor dealers in Dallas County procured license under the Baskin-McGregor law about the same time, and that he had no independent recollection of issuing a license to J. W. Ward. That the stub-book was kept by the county clerk for the clerk's convenience to show what licenses had been issued. No other records of licenses were kept, and that as he understood the law the stub-book was not required to be kept by the clerk. Afterwards the defendant on cross-examination admitted he had a liquor license covering the period of prosecution." Clearly in the light of the explanation of the court,

and the admission of the defendant, there could have been no error in the ruling thereof.

Bill of exceptions No. 2 shows that defendant requested the court to give the following charge: "You are instructed that in this case the defendant has introduced testimony of the incorporation and chartering of the 'Down Town Athletic and Literary Club,' and you are further instructed that unless the State has proved beyond a reasonable doubt that said 'Down Town Athletic and Literary Club' is a mere subterfuge, and has further proved beyond a reasonable doubt that said business on the second floor of 153 Main Street was on August 18, 1907, the exclusive business of J. W. Ward and a part of his licensed business on the first floor, you will acquit the defendant. And the burden of proof is upon the State to establish said facts beyond a reasonable doubt. And unless you so believe from the evidence beyond a reasonable doubt you will acquit the defendant." In this connection the court charged the jury as follows: "You are further instructed that, if you believe from the evidence or have a reasonable doubt thereof that the house or place alleged to have been open or kept open between the hours of midnight Saturday, August 17, 1907, and five o'clock a. m. of the following Monday, August 19, 1907, was at said time used as a bona fide club organized for the purpose of the support and promotion of a literary undertaking providing literature for its members, and the promotion of athletic arts among its members and that said club was not a sham or subterfuge for the purpose of evading the Sunday law, then you will acquit the defendant." This charge certainly covered all that appellant could ask, to say the least of it. We think the evidence in this case scarcely warranted any charge of this character. Appellant owned the saloon and was running the upstairs, according to the evidence, in open violation of the law on Sunday, under the patent subterfuge of a literary club. The court very properly terms the defense a "sham;" and such a thin disguise and wilful violation of the law scarcely requires a charge of any character. However, the court covered appellant's special charge in the main charge.

Appellant asked the court to give the following special charge: "If you should believe beyond a reasonable doubt that the defendant J. W. Ward was conducting a separate and distinct bar and place of business on the second story of said building without a separate license therefor, he could not be convicted in this case." There is no evidence that it was a separate bar, hence the charge was not required.

The other charges of appellant as far as any of them were pertinent, were covered in the main charge of the court. The evidence in this case clearly supports the verdict of the jury. Appellant, in order to evade the law, had charge of the building and organized what he called a club, but the whole testimony shows

that he had exclusive control of the premises. The jury was amply warranted in their verdict, and the judgment is in all things affirmed.

*Affirmed.*

[Rehearing Denied March 17, 1909.—Reporter.]